UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WRV 151 ST LLC,

                     **Plaintiff,**

       **-against-**

EXXON MOBIL CORPORATION and SHELL USA,
INC.,

                     **Defendants.**

**COMPLAINT**

Index No.:

Plaintiff, **WRV 151 ST LLC** ("Plaintiff"), by its attorneys, **SAHN WARD BRAFF COSCHIGNANO PLLC**, as and for its Complaint, alleges as follows:

## INTRODUCTION

1.      In this action, pursuant to the New York State Navigation Law ("Navigation Law"), Plaintiff seeks compensation for all cleanup and removal costs, including all direct and indirect damages, associated with confirmed petroleum releases on its property located at 151-01 14th Avenue, Whitestone, New York (the "Property"), which was the site of a former gasoline station.

2.      The former gasoline station at Plaintiff's Property consisted of, among other things, underground storage tanks ("USTs"), with associated piping and gasoline dispensing systems owned by Defendants, Shell USA, Inc., or its predecessor ("Shell Oil"), and Exxon Mobil Corporation, or its predecessor ("Mobil" or "Exxon Mobil").

3.      In conjunction with certain environmental site assessment studies at Plaintiff's Property, completed in or around Spring 2021, gasoline releases into the Property were discovered.

4.      Following the discovery of gasoline releases on the Property, a New York State Department of Environmental Conservation ("NYSDEC") Spill record was opened for the site on

July 27, 2022, NYSDEC Spill No. 2203689, and further investigation and studies are required for the eventual remediation of the site.

5.    After further analysis, the gasoline releases were traced to the USTs and gasoline dispensing systems of Shell Oil and Mobil at the Property dating to the 1940s through approximately 1985.

6.    Upon information and belief, Mobil continued to sell gasoline to Sanft at the Property until the station at the Property was closed in 1988.

7.    The gasoline released into the Property is in the soil and continues to impact groundwater in the Property.

8.    The NYSDEC has required Plaintiff to undertake full remedial investigation in preparation for required remediation of the gasoline releases.

9.    In November 2022, a site investigation concluded that the gasoline released into the Property exceeded regulatory standards and a NYSDEC required remedial action was necessary.

10.    By February 2024, the NYSDEC approved a Supplemental Off-site Remedial Investigation workplan to delineate the extent of the gasoline in the Property reaching adjacent properties.

11.    In June 2024, NYSDEC accepted the results indicating that the gasoline release does not appear to have migrated off the Property, and that the gasoline released into the Property required a NYSDEC Remediation Action Work Plan.

12.    The total estimated costs for completion of a NYSDEC required remediation work plan are likely to exceed $2,000,000.00.

13.     As such, in this action, Plaintiff seeks to recover all direct and indirect costs, under the Navigation Law, from Shell Oil and Mobil for the full remediation of the Property, including all associated investigative and attorneys' fees.

## JURISDICTION

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and Defendants, Exxon Mobil Corporation and Shell USA, Inc., are citizens of different states than Plaintiff.

15.     The facts giving rise to the claims in this action occurred in the County of Queens and the State of New York, and within the jurisdiction of the United States District Court for the Eastern District of New York. Plaintiff has a place of business in Whitestone, New York, and Defendants are registered to do business in the State of New York.

## THE PARTIES

16.     Plaintiff is a limited liability company duly organized under the laws of the State of New York, with a place of business located at 151-01 14th Avenue, Whitestone, New York 11357.

17.     Upon information and belief, Defendant, Exxon Mobil Corporation, is a corporation organized under the laws of the State of New Jersey, with its headquarters located at 22777 Springwoods Village Parkway, Spring, Texas 77389.

18.     Upon information and belief, Defendant, Shell USA, Inc., is a corporation organized under the laws of the State of Delaware, with its headquarters located at 150 N. Dairy Ashford Road, Houston, Texas 77079.

## STATEMENT OF FACTS

### A.  The Property

19.    By deed dated November 22, 2021, Plaintiff acquired the Property located at 151-01 14th Avenue, Whitestone, New York, and identified on the New York City Land and Tax Map as Block 4530, Lot 12 in the Borough of Queens.

20.    The Property is a square-shaped parcel totaling approximately 0.23 acres and is located at the intersection of 14th Avenue and Clintonville Street in Whitestone, New York.

21.    The Property is currently improved with a 8,564-square foot, two-story commercial building utilized as office, warehouse and fabrication space by commercial tenants.

22.    The depth to groundwater at the site is approximately 19 - 22 feet below grade surface, and the regional groundwater flow is northwest towards 12th Road.

23.    Plaintiff's ownership has not involved the ownership or operation of a gas station or repair shops, nor has Plaintiff stored any gasoline products on the Property.

### B.  Historical Use of Property as Shell Oil and Exxon Mobil Gas Station

24.    Upon information and belief, from 1941 to 1965, Shell Oil owned 550-gallon gasoline USTs, and the related piping and dispensing system, at the Property.

25.    Upon information and belief, from 1941 until 1965, Shell Oil gasoline was sold at the gasoline service station on the Property.

26.    During the years 1957 through 1963, Shell Oil advertised in the New York Telephone book Yellow Pages for the sale of its gasoline at the Property.

27.    Specifically, during the years 1957 and 1958, Shell Oil's advertisements indicated that "Shell Premium Gasoline with TCP" was for sale at the Property.

28.     During the years 1959 and 1960, as well as 1962 and 1963, Shell Oil's advertisements indicated that "Super Shell with TCP" gasoline was for sale at the Property.

29.     Upon information and belief, between 1965 and 1988, Exxon Mobil's predecessor, Mobil Oil Corporation, purchased the existing USTs and relating piping and dispensing system from Shell Oil.

30.     Upon information and belief, upon becoming the branded identity of the Property and owner of its systems, in or around 1965, Exxon Mobil's predecessor installed a 2,000-gallon gasoline UST.

31.     During this time that gasoline was sold to consumers, Exxon Mobil's predecessor owned the USTs and the equipment dispensing gasoline.

32.     Upon information and belief, between 1965 and 1988, Sanft Auto Service, a lessee of the Property, ran a Mobil branded gasoline station and Mobil gasoline was sold at the Property.

33.     In 1985, the Exxon Mobil gasoline USTs and related systems were sold to the lessee, Sanft, who ran the gasoline station until 1988 when its lease expired, and the Property ceased operating as a gasoline service and repair shop.

34.     All of these USTs were removed in 1989 by the owner of the Property, and lessee Sanft went defunct not long thereafter, in 1992.

C. **Plaintiff's Use of the Property**

35.     Since 1988, the Property has been used as a commercial property with commercial tenants that have not been involved in gasoline sales or related service, and no gasoline has been stored on the Property by Plaintiff.

### D. Investigation of Soil Contamination

36.    The Property has been the subject of environmental site assessments of the gasoline releases.

37.    In June 2021, Plaintiff had a Phase I Environmental Site Assessment ("ESA") completed for the Property.

38.    In June 2021, a Phase II ESA was also completed, which consisted of a geophysical survey, as well as soil, groundwater and sub-slab vapor sampling.

39.    The Phase II ESA soil sampling results showed that gasoline related volatile organic compounds ("VOCs") exceeded New York's Unrestricted Use Soil Cleanup Objectives ("SCOs") and groundwater sampling results showed gasoline related VOCs exceeded Ambient Water Quality Standards consistent with the use of UST for gasoline storage.

40.    Based upon a review of the sampling results in the Phase II ESA, the gasoline release into the Property was reported to NYSDEC.

41.    On July 27, 2022, the NYSDEC opened petroleum Spill No. 2203689, which remains open, and subject to NYSDEC requirements for Spill closure and gasoline spill remediation.

42.    At that time, in July 2022, NYSDEC required the submission of a Soil and Groundwater Investigation Work Plan.

43.    NYSDEC approved the Soil and Groundwater Investigation Work Plan, and subsequent sampling according to the approved plan was performed to characterize the extent of gasoline impacts to soil and to groundwater at the Property.

44.    These efforts included installation of monitoring wells and the collection and laboratory analysis of soil samples from five soil borings, as well as installation and collection and

6

laboratory analysis of samples from four groundwater wells, and a well elevation survey that was completed to identify site specific groundwater flow.

45.     Each of these NYSDEC approved and required tasks was successfully completed.

46.     The sampling results demonstrated that gasoline impacted soils were found in the areas where the former 550-gallon gasoline USTs and associated piping and dispensing areas and piping were installed on the Property.

47.     The sampling results showed that the levels of gasoline related chemicals found in the Property exceeded NYSDEC regulatory thresholds.

48.     Thereafter, in November 2022, a Site Investigation Report was submitted to NYSDEC.

49.     The Site Investigation Report indicated that, under NYSDEC regulatory standards, policies and state law, remediation of gasoline impacted soils at or near the location of the former gasoline USTs was necessary, and that investigation of off-site gasoline impacts soils would also be necessary.

50.     In February 2024, NYSDEC approved a Supplemental Off-site Investigation Work Plan for the purpose of delineating whether the gasoline released into the Property had migrated to adjacent properties.

51.     In June 2024, NYSDEC accepted the sampling results of the Supplemental Off-site Investigation work that showed that there were no off-site impacts from the gasoline in the soil and in the ground water from the Property.

52.     NYSDEC agreed that the on-site soil and groundwater impacts of the gasoline released into the Property must be addressed in a Remedial Action Work Plan.

53.     The Remedial Action Work Plan has not yet been reviewed or approved by NYSDEC.

54.     Prior to the commencement of remediation work at the Property, NYSDEC is required to approve a Remedial Action Work Plan prepared and submitted by the Plaintiff.

55.     The Plaintiff is currently preparing a Remedial Action Plan. At this time, Plaintiff estimates that costs and expenses to address and remediate the gasoline impacted soils and groundwater to NYSDEC requirements will likely exceed $2 million.

**E.  Forensic Investigation of Gasoline Petroleum Released on the Property**

56.     The Plaintiff had additional review and analysis of on-site sampling performed on the gasoline impacted soil and groundwater.

57.     The forensic analysis investigation reviewed the history of gasoline releases into the Property.

58.     The forensic analysis identified the timing of these gasoline releases that date back to the Property's use as a gasoline station from the 1940s to the 1980s.

59.     The results of this forensic analysis confirmed that gasoline was released into the Property for several decades that extend to the years the gas was sold at the gasoline station on the Property.

60.     The analysis of the sampling identifies gasoline releases into the Property dating to the years of both Exxon Mobil's and Shell Oil's ownership of the gasoline tanks and the related piping dispenser systems.

61.     The forensic analysis shows that leaded gasoline was released into the Property.

62.     The forensic analysis also indicates that the Shell gasoline additive, TCP, was found in the gasoline released into the Property.

8

63.     The leaded gasoline chemical signatures – since unleaded gasoline became predominate in the early to mid-1980s – conclusively demonstrate that there were gasoline releases at this Property since at least the 1940s to the mid-1980s during the use of the Property as a gasoline station.

64.     The comparison of the on-site sampling with off-site sampling confirms that leaded gasoline was released into the Property – establishing the timeline of release and the NYSDEC requirement to remediate the gasoline spill.

65.     Thus, in addition to releases of gasoline during Exxon Mobil's tenure, the forensic analysis confirms that the gasoline dating back to the 1940s, the time, upon information and belief, of Shell Oil's sale of gasoline at the Property, indicating that both Defendants are responsible for the cost and expense of meeting NYSDEC remedial obligations, and the liability obligations set forth in the Navigation Law.

**AS AND FOR A FIRST CAUSE OF ACTION**

**(Strict Liability Under Section 181 of the New York Navigation Law
Against Defendants, Exxon Mobil and Shell Oil)**

66.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs above with the same force and effect as though more fully set forth at length herein.

67.     Section 181 of the New York Navigation Law provides that "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages."

68.     Defendants' liability is joint and several.

69.     Section 172(14) of the New York Navigation Law defines "person" to include "public or private corporations, companies, associations, societies, firms, partnerships, joint stock companies, individuals."

70.     Defendants are "persons" under the Navigation Law.

71.     Pursuant to Section 172(8) of the New York Navigation Law, "discharge" is defined as "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters."

72.     Section 172(15) defines "petroleum" as "oil or petroleum of any kind and in any form including, but not limited to, oil, petroleum, fuel oil, oil sludge, oil refuse, oil mixed with other wastes and crude oils, gasoline and kerosene."

73.     Section 172(18) defines "waters" to include "all lakes, springs, streams and bodies of surface or groundwater, whether natural or artificial, within the boundaries of this state."

74.     Defendants directly and proximately caused the release and discharge of gasoline, including VOCs, at the Property.

75.     Gasoline, which has been released and discharged at the Property has migrated into the subsurface groundwater.

76.     Defendants were directly, actively and knowingly involved in the culpable actions or inaction, which led to continued discharges of gasoline into the Property.

77.     Defendants directly, actively and knowingly allowed discharges of gasoline into the Property to continue unabated from the 1940s through the 1980s.

78.     The releases and discharges of gasoline at the Property constitute violations of the New York Navigation Law.

79.    Plaintiff has been damaged as a result of the releases and discharges of gasoline into the Property, which have not been adequately remediated by the Defendants.

80.    Plaintiff has incurred, and will incur, direct or indirect damages, including costs associated with remediation of the releases and discharges of gasoline into the Property, and consultant and attorneys' fees related thereto.

81.    Pursuant to Sections 181(1) and 181(5) of the New York Navigation Law, Defendants are strictly liable, jointly and severally, for all direct and indirect damages, including without limitation, costs incurred, or to be incurred, by the Plaintiff in connection with the cleanup and remediation of gasoline at the Property, in an amount to be proven at trial, but no less than $2,000,000.00, plus interest, costs and attorneys' fees.

**WHEREFORE**, the Plaintiff respectfully demands judgment against Defendants as follows:

a.    On the First Cause of Action, a money judgment against Exxon Mobil and Shell Oil, for violation of Section 181 of the New York Navigation Law, in an amount to be proven at trial, but no less than $2,000,000.00, plus interest, costs and attorneys' fees;

b.    An award of cost, disbursements, consequential damages, punitive damages and reasonable attorneys' fees in connection with this action; and

c.    Such other and further relief as may be just and proper.

Dated: Uniondale, New York
      March 3, 2024

           **SAHN WARD BRAFF COSCHIGNANO PLLC**
           *Attorneys for Plaintiff, WRV 151 LLC*

           By: _____
              **JOHN L. PARKER, ESQ.** (2174)
              **JOSEPH R. BJARNSON, ESQ.** (9783)
              333 Earle Ovington Boulevard, Suite 601
              Uniondale, New York 11553
              (516) 228-1300